[No. A048111. First Dist., Div. Five. Nov. 29, 1990.]

KATHLEEN E. BONNER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and State
Compensation Insurance Fund, Respondents.

---

**COUNSEL**

Jones, Brown, Clifford & McDevitt and Yale I. Jones for Petitioner.

Krimen, Hershenson, Da Silva & Daneri and Louis Harris for Respondents.

---

**OPINION**

**KING, J.**—In this case involving the issue of the degree of the employer's negligence for purposes of determining a credit against an injured employee's recovery by settlement against a third party, we hold that the employer's statutory duty to maintain a safe workplace cannot be delegated to a third party so as to effectively insulate the employer from liability. Where the employer has knowledge of a dangerous condition in the workplace caused by the negligence of a third party, or reasonably should have discovered it, and fails to take reasonable steps either to alleviate the danger or to give an adequate warning in order to prevent injury to employees, the employer, for purposes of the credit determination, must, as a matter of law, be found concurrently negligent to a degree greater than a de minimis amount. We also hold that with regard to designation of the amount of likely tort damages which the employee would have reasonably recovered, where there is a failure to comply with the mandate of Labor Code section 5908.5[1] that the determination of a petition for reconsideration state the evidence relied upon and specify the reasons for the decision, the determination must be reversed because it is impossible on appeal to determine if the designation of damages is supported by substantial evidence. Petitioner

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Section 5908.5 provides, as pertinent: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a workers' compensation judge and shall be in writing, signed by a majority of the appeals board members assigned thereto, and *shall state the evidence relied upon and specify in detail the reasons for the decision*." (Italics added.)

Kathleen E. Bonner (hereafter petitioner) seeks review of an order from the Workers' Compensation Appeals Board (Board), denying reconsideration of workers' compensation judge (WCJ) Philip Miyamoto's comparative negligence allocations, as follows: (1) 5 percent to office manager Marie A. Moodie (Moodie), acting on behalf of petitioner's employer, Gerald W. Bonner, C.P.A. (hereafter employer), and (2) 95 percent to the third party owner of Fox Plaza where the employer's business was located. Petitioner also contends that the Board erred in its assessment of total potential tort damages in the amount of $500,000.

Respondent State Compensation Insurance Fund (SCIF), the workers' compensation carrier for the employer, responds that the Board's decision is supported by substantial evidence. SCIF further contends that petitioner has failed to comply with California Rules of Court, rule 57.

For the reasons discussed below, we annul the Board's allocations of comparative negligence and assessment of damages.

BACKGROUND

*Procedural History*

On Friday, October 17, 1986, petitioner sustained an industrial injury to her left knee and hip when she slipped on liquid detergent and fell as she entered her employer's office.

Petitioner filed both a workers' compensation claim against her employer and a third party civil action against the owners and managers of her employer's premises. The third party civil action settled out of court for a gross amount of $500,000, with petitioner receiving a net recovery of $330,790. SCIF paid a total of $17,740 in workers' compensation indemnity benefits and $16,710.88 in medical expenses.

Following settlement of the civil case, SCIF sought, pursuant to section 3861,[2] a temporary suspension of its liability to pay workers' compensation benefits, claiming a credit against future indemnity and medical costs for the net amount of petitioner's civil settlement. Petitioner objected, contending that substantial employer fault contributed to her injuries.

---

[2] Section 3861 provides: "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code, or has not been applied to reimburse the employer."

On August 3, 1989, the matter proceeded to hearing before WCJ Miyamoto regarding the percentage of employer and third party negligence, and the total potential value of petitioner's civil damages. The parties stipulated that petitioner was not negligent.

On September 19, 1989, the WCJ issued his opinion. On October 11, 1989, petitioner sought reconsideration. On November 8, 1989, the Board denied reconsideration, adopting and incorporating the WCJ's initial opinion and his report and recommendation on petition for reconsideration dated October 13, 1989.

*Factual History*

Petitioner was employed for 19 years as a bookkeeper and receptionist for employer's small accounting firm located in a suite on the 12th floor of the Fox Plaza building in San Francisco. Her scheduled work days were Monday through Thursday, although she worked on Fridays twice a month due to the volume of her work. In addition to petitioner and office manager Moodie, the employer had three other employees, Diana Resnick, Chris Bolton, and Anita Bottari.

The office door was locked during working hours. Members of the public, such as persons from the board of equalization or SCIF, auditors, or friends of employees, periodically entered the office. They were allowed access after knocking. Petitioner, office manager Moodie, and employer Bonner each had a set of keys to the office. Resnick and Bolton did not have keys to the office; Bottari did. After a person entered the office door, a deadbolt lock customarily was secured by hand in order to relock the door.

On October 17, 1986, the day of petitioner's accident, Moodie was the first to arrive at the office in the morning. Upon entering, she noticed that a bottle of Dawn liquid dish detergent, normally kept on the floor behind a coat rack, had been spilled on the linoleum floor. Moodie did not spill the dish soap, but assumed that it had been spilled by the night janitor who was employed by the building owners. Approximately three-quarters of the bottle had been spilled. Upon seeing the green liquid on the floor, Moodie immediately called the building manager. She left a message on a recording machine, requesting that the manager send someone to clean up a liquid soap spill as soon as possible. Moodie testified that she did not attempt to clean up the spill because it was greasy and she did not want to get it on her clothing, that it was not part of her job responsibilities, and that she had no means to mop it up. It was customary to call the building manager for a janitor when a spill occurred in the office. Moodie further testified that she knew the soap spill was hazardous.

Shortly after Moodie made the telephone call to the building manager's officer, Bolton arrived at work. Bolton saw the spill. Moodie told him that she had called the building manager to send a janitor to clean up the spill. Moodie testified that she did not expect Bottari at work that day because she was on vacation; nor did she expect petitioner because "she had Fridays off." The employer was not expected because he was at a seminar. Moodie further testified that she did not think it was necessary to cordon off the spill area because it was green and easily visible. Nonetheless, when Resnick entered the office to begin work, Moodie verbally warned her to be careful of the spill on the linoleum floor.

Approximately 30 minutes after Moodie's arrival, building janitor Joe Alee (Alee) arrived. He let himself in with a key, and made an unsuccessful attempt to clean up the spill with a mop and bucket of water. Upon leaving to rinse out his mop and get a bucket of fresh water, Alee testified that he warned Moodie, Bolton and Resnick to be careful. Alee stated that he would be right back. Moodie testified that she did not hear Alee's warning; however, she was aware that the spill was not entirely mopped up, and that Alee's attempt to mop it up with water had rendered it transparent. Alee was gone approximately 20 minutes. Moodie did not put up a barricade or cordon off the spill area; nor did she place a warning sign in a conspicuous place.

During Alee's absence, petitioner arrived at work. With two heavy briefcases, she opened the door and initially backed into the office. No one gave her a verbal warning. Moodie was at her desk within sight of the door, but did not hear petitioner come in. As petitioner turned and left the carpeted reception area, she did not see the transparent spill in the work area. As a result, she slipped and fell seriously injuring her knee and hip.

### The WCJ's Opinion on Decision

Initially commenting that the employer's negligence could be set at 0 percent and that the third party's negligence closely approached 100 percent, WCJ Miyamoto ultimately determined that the employer's negligence was "between one and five percent." Moodie's negligence, determined the WCJ, was "nominally miniscule." He concluded that she acted prudently and exercised reasonable and ordinary care under the circumstances. Alee, however, upon leaving to get clean water, determined the WCJ, failed to give an emphatic warning of the danger, to put up barriers, and to return for at least 30 minutes.

The WCJ determined that it "was reasonable for Moodie to have transferred responsibility for the cleanup to the third party." She reasonably

could not have foreseen that Alee would have rendered the slippery spill transparent to others or would not return immediately to finish the cleanup, stated the WCJ. "Moodie," emphasized the WCJ, "was not in the business or occupation of cleaning floors," and she did not anticipate that she should take further steps to protect the petitioner. "It was reasonably not foreseeable by Moodie that besides the other employees in the office that morning the applicant would arrive at the office carrying two heavy briefcases and be endangered by the transparent spill." While Alee could have foreseen that someone would be hurt, reasoned the WCJ, Moodie could not.

Regarding petitioner's contention that Bolton and Resnick failed to verbally warn her when she entered the office, the WCJ opined: "As to the other two employees who both apparently also failed to warn the applicant, no negligence can also be found, and in any event, their negligence to the applicant cannot be attributed under the law (Labor Code § 3601)."

WCJ Miyamoto concluded: "From this admixture, as mentioned before, it can be found the employer herein is absolved from any negligence at all to the applicant. Nonetheless, it will be found from this admixture that somehow there is a residue of not more than a 5% share of comparative negligence for the employer."

On the issue of damages, the WCJ considered the testimony of expert witness Clark G. Leslie who testified on behalf of petitioner that the potential verdict value, if petitioner's case had been decided by a jury, based on his experience, would have been approximately $883,840. As pertinent, the WCJ concluded: "Arguments for something in the range of $880,000.00 were not entirely persuasive. Damages in the amount of $385,000.00 would be considered reasonable but are raised to $500,000.00."

DISCUSSION

I

Under the workers' compensation statutes, an employee who suffers an industrial injury may recover compensation benefits from his or her employer without regard to the negligence of either party. (§ 3600.) With certain specified exceptions, an injured employee's compensation claim against the employer constitutes an exclusive remedy. (§§ 3601, 3602.) The employee's claim for compensation does not, however, affect his or her claim or right of action for all damages proximately resulting from the injury "against any person other than the employer." (§ 3852.)

When a third party is liable for an employee's injury, the controlling statutes grant the employer the right (1) to obtain reimbursement from the

third party for workers' compensation benefits which the employer already has paid (§§ 3852, 3853, 3856, subd. (b)), and (2) to obtain a credit toward its future liability for workers' compensation equal to the amount of the employee's recovery that has not been applied previously to the payment of litigation expenses or attorney fees. (§ 3861.) It is this latter credit that is at issue in the case before us.

■ In *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684], the Supreme Court held that a concurrently negligent employer should not be barred totally from obtaining credit, but instead should receive, according to the principles enunciated in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], credit only for the amount by which its compensation liability exceeds its proportional share of the injured employee's tort damages. (*Associated Construction & Engineering Co., supra,* 22 Cal.3d at p. 842.) Thus, when the issue of an employer's concurrent negligence arises in the context of the employer's claim for credit based on the employee's settlement with the third party, the Board must determine the appropriate contribution of the employer because the employee's settlement does not represent a judicial determination of tort damages. (*Id.,* at p. 843.) Specifically, the Board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled. (*Ibid.*)

## II

■ Negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." (Rest.2d Torts, § 282.) The essential elements of negligence include: a legal duty to exercise due care; a breach of that duty; and the breach as the proximate or legal cause of the resulting injury. (*Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332, 338 [183 Cal.Rptr. 156].)

### Statutory Duty to Provide a Safe Workplace

■ A negligent tort requires a violation of a *legal duty,* imposed by statute, contract, or otherwise, owed by the negligent party to the person injured. (5 Witkin, Summary of Cal. Law (9th ed. 1988) § 6, p. 61.) Whether a legal duty exists in any given situation is a question of law. (*Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 443 [165 Cal.Rptr. 741].)

In the matter before us, the employer was under a legal duty to the petitioner as an employee to maintain a safe and healthful place of employment pursuant to the mandate of sections 6400 through 6404.[3]

■ In general, an employer's statutory duty under the Labor Code is greater than a duty of care imposed pursuant to common law principles, as codified in Civil Code section 1714.[4] (*Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 271-272 [41 Cal.Rptr. 728]; see generally *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The duty to maintain a safe workplace encompasses many responsibilities, including the duty to inspect the workplace, to discover and correct a dangerous condition, and to give an adequate warning of its existence. Here, it was Moodie's duty to maintain a workplace free "from danger to the life, safety, or health of employees as the nature of the employment reasonably" permitted, and to utilize "any practicable method of mitigating or preventing a specific danger . . . ." (§ 6306.)

■ The WCJ erred in limiting the scope of Moodie's duty on the basis of his conclusion that she reasonably could not foresee the risk of injury to petitioner. Foreseeability of harm is important when trying to determine whether a duty of care should be imposed. (*Vandermost* v. *Alpha Beta Co.* (1985) 164 Cal.App.3d 771, 777 [210 Cal.Rptr. 613].) ■ ■ ■ ■ ■ However, an employer's duty to maintain a safe workplace exists as a matter of statute, and is not predicated on a finding that a particular injury is foreseeable. (Cf. *Short* v. *State Compensation Ins. Fund* (1975) 52 Cal.App.3d 104, 108-109 [125 Cal.Rptr. 15].)[5]

---

[3] Section 6400 reads: "Every employer shall furnish employment and a place of employment which are safe and healthful for the employees therein."
Section 6401 reads: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."
Section 6402 reads: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful."
Section 6403 reads: "No employer shall fail or neglect: [¶] (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. [¶] (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."
Section 6404 reads: "No employer shall occupy or maintain any place of employment that is not safe and healthful."
[4] Subdivision (a) of Civil Code section 1714 reads, as pertinent: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."
[5] Although not pertinent to the result herein, we note that the WCJ's statement about foreseeability of harm, as it relates in general to the imposition of a duty of care, is a misstatement

*Breach of Duty*

■ Having determined the scope of the employer's duty, we now turn to the question of the employer's negligence or breach of its statutory duty. Liability attaches to the employer, as a concurrent tortfeasor in this situation, not because the employer was responsible for the acts of the independent third party tortfeasor, but because the employer was responsible for all damages of which Moodie's own negligence was a proximate cause. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 587 [146 Cal.Rptr. 182, 578 P.2d 899].) ■ When the separate and distinct negligent acts of two parties together contribute to cause the injury, each is and both are the proximate cause. (6 Witkin, *supra*, § 970, p. 360.)

Here, the uncontradicted evidence shows that there was a dangerous condition in the place of employment rendering it unsafe. Moodie discovered the condition when she arrived at work. She knew the condition was dangerous because she verbally cautioned employee Resnick to be careful when Resnick entered the office. Moodie was charged with the primary responsibility for the safety of the employees. (*Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 470-471 [158 Cal.Rptr. 882, 600 P.2d 1339].) Contrary to the WCJ's conclusions, she did not exercise reasonable and ordinary care under the circumstances. It is undisputed that Moodie failed to mitigate the danger either by barricading it from foot traffic or by giving an adequate warning.

■ Moreover, an employer's duty to furnish employees with a safe place to work is nondelegable. (*Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 233-234 [282 P.2d 69]; *Connor* v. *Utah Constr. & Mining Co.*, *supra*, 231 Cal.App.2d at p. 276.) The WCJ's finding that "[i]t was reasonable for Moodie to have transferred responsibility for the cleanup to the third party" is erroneous. Moodie's telephone call to the building manager requesting a janitor did not effect a transfer or discharge of the employer's statutory duty to maintain a safe workplace. (*Short* v. *State Compensation Ins. Fund*, *supra*, 52 Cal.App.3d at p. 109.) It is not unreasonable to have required Moodie to either place a barricade, such as a chair,

---

of law. "[A] court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) Additionally, we note that although the parties agreed that petitioner's employment contract did not call for her to work on Fridays, there is unrebutted testimony from petitioner that she regularly worked at least two Fridays each month.

in front of the spill, or at the very least, to place a warning sign in a conspicuous place.

When Alee departed, leaving the cleanup task uncompleted, Moodie's duty of care increased. The WCJ, however, concluded that "[e]ven assuming she did hear a warning [from Alee], it was unanticipated by Moodie [that] she should now take further precautions." We disagree. Whether Moodie actually heard Alee's warning as he left is irrelevant. She knew he had not completed the cleanup task when he left the office to get fresh water. She knew his initial attempt to mop up the spill with water had left it transparent and, indeed, more hazardous. At that point, Moodie's duty required that she immediately inspect the pertinent work area, in order to ascertain the exact nature of the increased danger resulting from the transparent condition left by Alee. Furthermore, upon Alee's departure, it became more imperative that Moodie either satisfactorily barricade the spill area or put up a visibly sufficient warning sign.

Nevertheless, Moodie did not get up and inspect the area, but continued to work. The WCJ emphasized that she sat with her back to the entry door and diligently concentrated on her work, inferring that it was reasonable that Moodie did not hear petitioner enter the office and, thus, was unable to give a verbal warning as she had done previously when she heard Resnick enter. The fact that someone could enter the office and be exposed to the hazard without her knowledge required affirmative action by Moodie to prevent anyone from slipping and suffering injury as a result of the hazard created by the transparent spill.

To limit the employer's liability, as the Board would do, by not requiring corrective action or adequate warning where it reasonably could have been done, would result in a harsh reality for unsuspecting employees. It is the operative control and power to minimize dangerous risks that lie at the heart of an employer's duty to maintain a safe workplace. Under the circumstances, Moodie's actions were anything but prudent. Had she exercised reasonable care, it is quite likely that petitioner would not have sustained injury. Clearly, Moodie's breach was a proximate cause of petitioner's injury.

We therefore find, as a matter of law, that the employer was concurrently negligent to a degree greater than 5 percent in connection with petitioner's injury. We recognize that normally it is not within our province to assign the exact percentage of employer fault. However, given the WCJ's professed lack of knowledge in this area of law, we conclude that the comparative

negligence of the employer must be closer to that of the negligent building owner than the 5 percent represents.

## III

We next address the issue of damages. Petitioner contends that the WCJ erroneously accepted the settlement amount of $500,000 as evidence of the potential tort recovery, in lieu of the unrebutted expert testimony of Leslie that the damages likely would have been $883,840. The WCJ's determination of damages, argues petitioner, is without legal authority and cannot be upheld, although we note that petitioner fails to cite any legal authority in support of her position.

### Tort Damages

The workers' compensation statutes governing employer and employee actions against third parties arising out of industrial injuries do not define the substantive law regarding recovery in a third party civil action. (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 873 [140 Cal.Rptr. 638, 568 P.2d 363].) Instead, it is defined by general tort law. (*Id.*, at p. 874.) Therefore, in a section 3861 proceeding before the Board concerning the injured employee's potential recovery of tort damages, it is general tort law that governs.

In a personal injury matter, compensatory damages are awarded to compensate the injured person for his or her actual loss as a result of the injuries. Compensatory damages include: (1) the reasonable value of necessary medical expenses incurred from the time of injury and those which are reasonably certain to be incurred in the future; (2) the value of loss of earnings or impairment of earning capacity from the time of injury to the time of settlement and loss or impairment of future earning capacity; (3) a reasonable compensation for physical pain, physical disability, and mental suffering, including past and future; and (4) the value of all other special losses or expenses that can be proven. (See generally, Johns, Cal. Damages Law and Proof (4th ed. 1990) §§ 1.50–1.54, pp. 1-55–1-57.)

The determination of damages is primarily a responsibility of the trier of fact. On review, we must examine the particular circumstances involved in order to determine whether the designation of tort damages is supported by substantial evidence. (*Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 655 [151 Cal.Rptr. 399].) We are obligated to

uphold the designation of damages whenever possible and " 'all presumptions are in favor of the judgment.' " (*Id.*, at p. 654, citation omitted.)

Here, the fact that the parties settled the civil action for $500,000 does not render the WCJ's determination unreasonable *per se*. It may well be that the $500,000 figure designated by the WCJ is within the range of evidence. Parties to a personal injury lawsuit settle for many reasons. Also, it is within the discretion of the WCJ to reject in toto the testimony of an expert witness, so long as the WCJ does not act arbitrarily. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362].)

On this record, however, we cannot ascertain the basis for the damages finding. Thus, it is impossible to determine on review whether the designation of damages is supported by substantial evidence.

*Failure to Comply with Section 5908.5*

In his report and recommendation to the Board, the WCJ responded to petitioner's assertion on reconsideration regarding the issue of damages, as follows: "[T]he assessment of total damages at a reasonable $500,000.00 was made within the range presented by the parties." The Board in its order denying reconsideration merely incorporated by reference the WCJ's report on reconsideration. By incorporating the WCJ's report as such, the Board, as well as the WCJ, failed to comply with the requirements of section 5908.5 and California Code of Regulations, title 8, section 10860 [hereafter administrative regulation].[6] A single sentence in the WCJ's report, incorporated by the Board on denial of reconsideration, neither explains nor justifies the WCJ's original findings and opinion on the damages issue *in light of the petition for reconsideration*. Simply stated, the Board did not serve its proper reviewing function in response to the petition for reconsideration.

In its order denying reconsideration, the Board also incorporated the WCJ's initial opinion. While the Board may incorporate a WCJ's report and recommendation on reconsideration *if it complies with section 5908.5* (*Painter* v. *Workers' Comp. Appeals Bd.* (1985) 166 Cal.App.3d 264, 268

---

[6] Administrative regulation provides, as pertinent: "Petitions for reconsideration shall be referred to the workers' compensation judge from whose decision reconsideration is sought. The workers' compensation judge shall prepare a report which shall contain: [¶] (a) a statement of the contentions raised by the petition; [¶] (b) a discussion of the support in the record for the findings of fact and the conclusions of law; and [¶] (c) the action recommended on the petition."

[212 Cal.Rptr. 354]), no authority sanctions a double incorporation by reference, as a means of avoiding the statutory requirements concerning the Board's function on reconsideration. Pursuant to section 5908.5, petitioner was entitled to an adequate explanation, if one exists, regarding why expert witness Leslie's opinion concerning damages was rejected. (*Id.*, at p. 271.)

■ The purpose of this requirement is to help the Board avoid careless and arbitrary action, to assist the reviewing court in ascertaining the principles relied upon by the Board, and to make appellate review more meaningful. (*Postural Therapeutics* v. *Workers' Comp. Appeals Bd.* (1986) 179 Cal.App.3d 551, 556-557 [224 Cal.Rptr. 860].)

■ Here, the absence of any intelligent judicial explanation regarding the damages determination from either the WCJ or the Board indeed has precluded meaningful review, and as a result, is inherently prejudicial to petitioner. (*Painter* v. *Workers' Comp. Appeals Bd.*, *supra*, 166 Cal.App.3d at p. 271; accord *California Highway Patrol* v. Workers' Comp. Appeals Bd.(1986) 178 Cal.App.3d 1016, 1021 [224 Cal.Rptr. 94].)

Accordingly, the Board's designation of $500,000, as total potential tort damages is annulled.

## IV

■ Lastly, we turn to SCIF's contention that petitioner failed to comply with California Rules of Court, rule 57(a). Specifically, SCIF argues that petitioner declined "to include as exhibits any documents received into evidence." This argument is without merit. Rule 57(a) does not require the filing of "any" or all evidentiary documents with a petition for writ of review. Rather, it provides, as pertinent: "If it is claimed that the decision is not supported by substantial evidence, the petition must fairly state all the material evidence relative to the point at issue. The petition shall include, as exhibits, copies of: (1) each order, decision, or award to be reviewed, and (2) the referee's findings, and decision, including the referee's report and recommendation on the petition for reconsideration."

Petitioner has fully complied with the requirements of rule 57(a). Although petitioner in fact provided a fair statement of the evidence, the main thrust of her argument on review, contrary to SCIF's assertion, does not concern substantial evidence. Petitioner duly raises significant questions of law. Moreover, SCIF's reliance on *Nielsen* v. *Workers' Comp. Appeals Bd.* (1985) 164 Cal.App.3d 918 [210 Cal.Rptr. 843], is misplaced. *Nielsen* is distinctly inapposite to the instant matter.

SCIF's request for dismissal of the petition for failure to comply with rule 57(a) is denied.

CONCLUSION

The Board order, denying reconsideration, dated November 8, 1989, is annulled. The matter is remanded to the Board for further proceedings consistent with the views expressed herein.

Low, P. J., and Haning, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 21, 1991.