[No. D018844. Fourth Dist., Div. One. May 31, 1994.]

Conservatorship of the Person of JAMES S. McKEOWN III.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
JAMES S. McKEOWN III, Objector and Appellant.

504

## COUNSEL

Peter W. Singer, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, Bruce D. MacLeish and Janice L. Ingold, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**NARES, J.**—James S. McKeown III appeals an order reestablishing a conservatorship of his person after the trial court denied his motion to dismiss the reestablishment petition for lack of jurisdiction. McKeown also contends the trial court erred in instructing the jury regarding expert testimony. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A one-year conservatorship for McKeown was established on April 16, 1992. On March 22, 1993, the public conservator filed a petition to reestablish conservatorship. A hearing on the petition was noticed for April 15, 1993. McKeown, through his attorney, appeared specially reserving the right to contest jurisdiction, waived the hearing, and demanded a jury trial.

McKeown filed a motion to dismiss the reestablishment petition for lack of jurisdiction. McKeown alleged the citation for conservatorship of the person was issued by a department of social services clerk and not by the

court clerk or under court seal. When trial commenced on April 20, 1993, the court denied McKeown's motion, stating jurisdiction continued from the original conservatorship to the current reestablishment proceedings. The jury found McKeown gravely disabled and accordingly, the court reestablished McKeown's conservatorship. This appeal ensued.

DISCUSSION

I.

■ McKeown contends the trial court was without jurisdiction because the citation for conservatorship of the person was improperly issued. McKeown argues this citation must bear the signature of the court clerk for the court to have jurisdiction. This contention is without merit. This hearing was a reestablishment proceeding as opposed to an establishment proceeding. As such, the court had continuing jurisdiction from the date the previous conservatorship was established until the end of that one-year period. (*Conservatorship of Wyatt* (1987) 195 Cal.App.3d 391, 397 [240 Cal.Rptr. 632]; see also *In re Gandolfo* (1984) 36 Cal.3d 889, 894 [206 Cal.Rptr. 149, 686 P.2d 669].)

McKeown's conservatorship was established on April 16, 1992. The court, therefore, had jurisdiction over McKeown's person until April 16, 1993. (*Conservatorship of Wyatt, supra,* 195 Cal.App.3d at p. 397.) The public conservator filed a petition to reestablish conservatorship on March 22, 1993. A hearing on the petition was noticed for April 15, 1993. On that date, the court clearly had jurisdiction over McKeown. (*Ibid.*) McKeown appeared specially, reserving the right to contest jurisdiction. At that time, McKeown waived the hearing and demanded a jury trial. The jury trial began on April 20, 1993.

Although the jury trial commenced four days after the one-year conservatorship period, the initial hearing to reestablish the conservatorship was noticed before the end of the one-year period. Even a temporary interruption in the chain of conservatorship does not extinguish the court's continuing jurisdiction. (*In re Gandolfo, supra,* 36 Cal.3d at p. 896, fn. 2; *Conservatorship of Wyatt, supra,* 195 Cal.App.3d at p. 397.) *Gandolfo* found the trial court properly retained jurisdiction over a conservatee even though there was a six-week interruption in the chain of conservatorship. Here, there was at most a four-day interruption. In light of the factual similarities between the cases, we reject McKeown's contention that *Gandolfo* is inapplicable.

Accordingly, the court retained its jurisdiction over McKeown in the reestablishment proceeding from the previous conservatorship.

## II.

▇▇ McKeown argues the trial court should have given CALJIC No. 2.80[1] instead of BAJI No. 2.40[2] regarding the expert testimony of Dr. Robert Simmonds, a psychologist. We find McKeown's argument unpersuasive.

Initially, we note there is no duty to give CALJIC No. 2.80 in civil trials. (*Conservatorship of Law* (1988) 202 Cal.App.3d 1336, 1342 [249 Cal.Rptr. 415].) While McKeown likens conservatorship hearings with criminal trials, a conservatorship proceeding is civil, not criminal. (*Ibid.*) Nor is a conservatorship proceeding analogous to a criminal proceeding. (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 549 [200 Cal.Rptr. 262]; see also *Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].) We recognize some safeguards provided to criminal defendants have been applied to conservatorship hearings; however, the protections are those required by the due process clause of the California Constitution.[3] (*Conservatorship of Gordon* (1989) 209 Cal.App.3d 364, 368 [257 Cal.Rptr. 365].) Subsequent appellate decisions have declined to extend the application of other criminal principles to conservatorship hearings, and there is no basis to do so here. (See *Conservatorship of Law, supra,* 202 Cal.App.3d at p. 1342; *Conservatorship of Baber, supra,* 153 Cal.App.3d at p. 549 [refusing to extend the double jeopardy doctrine and the privilege not to

---

[1]CALJIC No. 2.80 states in pertinent part: "A duly qualified expert may give an opinion on questions in controversy at a trial. To assist you in deciding such questions, you may consider the opinion with the reasons given for it, if any, by the expert who gives the opinion. You may also consider the qualifications and credibility of the expert.

"You are not bound to accept an expert opinion as conclusive, but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable."

[2]BAJI No. 2.40, as given to the jury, states: "A witness who has special skill—special knowledge, skill, experience, training, and education in a particular subject has testified to certain opinions. This refers to Dr Simmonds. In determining the weight to give each opinion, you should consider the qualifications and believability of the witness, the facts and materials on which each opinion is based, and the reasons given for each opinion.

"An opinion is only as good as the facts and reasons upon which it is based. If you find that such fact has not been proved, or has been disproved, you must consider that in determining the value of the opinion. Likewise, if—you must consider the strengths and weaknesses of the witnesses—the strengths and weaknesses upon which the opinion is based.

"You're not bound by an opinion. Give each opinion the weight which you find it deserves. However, you may not arbitrarily or unreasonably disregard the psychological opinion testimony in this case which was not contradicted. Therefore, unless you find it is not believable, it's conclusive and binding on you."

[3]In *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], the California Supreme Court held due process requires proof beyond a reasonable doubt and jury unanimity in conservatorship proceedings under the Lanterman-Petris-Short Act. (*Id.* at p. 235.) *Roulet,* however, "does not transform conservatorship hearings into criminal cases." (*Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1098 [242 Cal.Rptr. 289].)

testify to conservatorship hearings]; *Conservatorship of Mitchell* (1981) 114 Cal.App.3d 606, 612 [170 Cal.Rptr. 759] [in a conservatorship hearing there is no absolute right to warning of the privilege against self-incrimination prior to a psychiatric examination]; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148 [218 Cal.Rptr. 796] [civil procedural law determines whether a conservatee has waived the right to a jury trial].)

In *Conservatorship of Law*, the conservatee argued the court was required to give the circumstantial evidence jury instruction applicable to criminal cases. The court in *Law* initially noted a conservatorship proceeding is not a criminal proceeding. The court held because the trial court gave the circumstantial evidence instruction applicable to civil cases, BAJI No. 2.00, the jury was sufficiently advised as to the quality, nature, and use of circumstantial evidence. (*Conservatorship of Law, supra,* 202 Cal.App.3d at p. 1342.)

Similarly, the court here gave the expert testimony instruction applicable to civil cases, BAJI No. 2.40, and not the corresponding criminal instruction, CALJIC No. 2.80. BAJI No. 2.40 correctly states a jury is not bound by an expert opinion and may reject it if it is not believable. Additionally, the jury was instructed generally on the manner in which to evaluate the credibility of witnesses, BAJI No. 2.20.[4]

McKeown challenges the last sentence of BAJI No. 2.40, that uncontradicted expert testimony is "conclusive and binding on you." But given the fact instructions must be considered as a whole and not by the individual paragraphs or sentences, the jury was properly advised as to Simmonds's expert testimony. (*Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 458 [132 P.2d 471]; see also *Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 464 [136 Cal.Rptr. 653].)

Even if we were to assume error, McKeown has not established the requisite prejudice. "The standard in conservatorship proceedings requires that error be harmless beyond a reasonable doubt." (*Conservatorship of Walker, supra,* 196 Cal.App.3d at p. 1094.) In light of the strong evidence of McKeown's mental disorder and his inability to meet the basic needs for food, clothing, or shelter, instructing the jury pursuant to BAJI No. 2.40 and not CALJIC No. 2.80 was harmless beyond a reasonable doubt.

---

[4]BAJI No. 2.20 informs the jury they "are the sole and exclusive judges of the believability of the witnesses." It further lists factors which assist the jury in determining the witness's credibility. It specifically calls to the jury's attention the "existence or nonexistence of a bias, interest or other motive." (*Ibid.*)

Simmonds testified McKeown suffered from a schizo-affective disorder, polysubstance abuse and pica. As a result of these illnesses, McKeown experiences paranoid delusions, depression, hearing voices telling him to kill himself, difficulty eating appropriate substances, and an inability to take care of his daily needs. Simmonds's testimony was not contradicted but supported by the testimony of Deborah McDougall, McKeown's caseworker.

Deborah McDougall, qualified as an expert, testified McKeown does not believe he has a mental illness, rather he believes he is merely an alcoholic. Based on this belief, McDougall is of the opinion McKeown will not continue to take his medication if released. McDougall further testified McKeown would be unable to take care of his clothes, food, and shelter or seek outpatient treatment if released.

In addition, the jury heard testimony from Robert MacLean, a mental health worker in McKeown's facility, McKeown, and McKeown's parents. Their testimony established McKeown had to be prompted to get out of bed, to take his medication, and to follow regular hygiene standards. McKeown bites himself, has smoked sap from a eucalyptus tree growing on the hospital patio, and is unable to distinguish between food and nonfood. McKeown is also belligerent with the hospital staff. MacLean was told by McKeown when released McKeown could support himself as a "mercenary." McKeown's parents both testified McKeown, on his own, is unable to care for his basic needs of clothing, food, and shelter. They believe McKeown needs to remain in a facility.

Accordingly, even if the court erred in instructing the jury pursuant to BAJI No. 2.40 and not CALJIC No. 2.80, any error was harmless beyond a reasonable doubt, given the overwhelming evidence of the necessity for a conservatorship in this case.[5]  ■  But while we uphold giving BAJI No. 2.40 rather than CALJIC No. 2.80 in this case, we must observe that the challenged language, that uncontradicted expert testimony is "conclusive and binding on you," does not withstand analysis.

The legal point is said to derive from *Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 236-238 [104 Cal.Rptr. 505, 502 P.2d 1]. But that case held only there was

---

[5]McKeown also asserts CALJIC No. 2.90, the "reasonable doubt" instruction given in this case, was constitutionally defective. Citing *Cage* v. *Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328], McKeown argues CALJIC No. 2.90 impermissibly reduces the People's burden of proof below that required by the state and federal constitutional guarantees of due process. The point is without merit. (*Victor* v. *Nebraska* (1994) __ U.S. __, __-__ [127 L.Ed.2d 583, 114 S.Ct. 1239].)

insufficient evidence of negligence given the uncontradicted expert testimony to the contrary, and the word "conclusive" nowhere appears in the opinion. Also, the case has never been cited, except in the BAJI text, for the conclusive effect to be accorded uncontradicted expert testimony.

In fact, what BAJI No. 2.40 does not point out is that as a *general* rule expert testimony, like any other, may be rejected by the trier of fact, so long as the rejection is not arbitrary. The statements of this principle appear often: "As a general rule, '[p]rovided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]' (*Hicks* v. *Reis* (1943) 21 Cal.2d 654, 659-660 [134 P.2d 788].) This rule is applied equally to expert witnesses." (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362]. See also *Horn* v. *General Motors Corp.* (1976) 17 Cal.3d 359, 368 [131 Cal.Rptr. 78, 551 P.2d 398]; *Lubetzky* v. *Friedman* (1991) 228 Cal.App.3d 35, 40 [278 Cal.Rptr. 706]; *Bonner* v. *Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 1023, 1038 [275 Cal.Rptr. 337]; and *South Bay Transportation Co.* v. *Gordon Sand Co.* (1988) 206 Cal.App.3d 650, 657 [253 Cal.Rptr. 753].)

The single exception to this general rule is in medical malpractice cases, where the standard of care, when testified to by experts who are uncontradicted, may be conclusively shown by such testimony. (See generally, 1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, §§ 524-525, pp. 494-496.) *Cobbs* v. *Grant* was a medical malpractice case, but the notations to BAJI No. 2.40, while suggesting BAJI No. 6.30 "may be used instead of this instruction in a medical malpractice case," do not point out that *apart* from medical malpractice cases, the last sentence of BAJI No. 2.40 does not correctly state the law.

In sum, the better statement of the point in question is the near-truism that the jury should not arbitrarily reject testimony from the witnesses. There is no need to further assert some testimony is "conclusive," and in the context of proceedings such as the present one, involving a high standard of proof, continued use of the "conclusive" language seems likely to lead only to a repetition of challenges such as the present one, both in the trial courts and on appeal.

We therefore suggest that the last sentence of the fourth paragraph of BAJI No. 2.40 (in brackets) not be given, at least in future conservatorship cases, although we reject the assertion of prejudicial error in this matter.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Froehlich, J., concurred.