[No. D006065. Fourth Dist., Div. One. July 5, 1988.]

Conservatorship of the Person of SANDRA LAW.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
SANDRA LAW, Objector and Appellant.

## COUNSEL

Licker & Licker and Mark D. Licker for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Esther C. Sanchez, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**STANIFORTH, J.***—Appellant Sandra Law appeals a jury verdict (Mar. 31, 1987) finding that she has a mental disorder and as a result of that mental disorder she is unable to provide for her basic personal needs of food, clothing or shelter. She was found to be a gravely disabled person and the conservatorship of her person was established April 3, 1987, following the jury verdict.

### FACTS

Law has suffered from a mental illness since 1973. She was first placed on a conservatorship in April 1985 and she has resided at the Country Hills Residential Care Facility in Lemon Grove. Dr. Rodrigos Munos, M.D., qualified as an expert witness and testified that he had been Law's treating psychiatrist since November 1986. During the five-month period he treated Law, Dr. Munos testified he saw her several times per week. In addition to the frequent examinations of her, Dr. Munos also relied upon interviews with the administrator of the Country Hills Residential Care Facility and interviews with Law's mother in making his diagnosis of Law's mental disorder. Dr. Munos diagnosed Law as being a severe paranoid schizophrenic. Also Dr. Munos testified that when Law refused to take her medication she exhibited bizarre behavior, inappropriate emotional reactions and expressed ideas of persecution and became suspicious of others. She became hostile and could not distinguish reality from her thoughts. On several occasions these combined symptoms led to her hospitalization.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Dr. Munos further testified that in November 1986, Law's medication was changed from Millaril to Haldol Deconate. In December of that year she began to receive large doses of the Haldol Deconate in injection because of the severity of her condition. The injected form of the medication remains in her body for a long period requiring injections only on a semi-weekly or monthly basis. Dr. Munos further testified Law had become dependent upon hospital and mental care facilities in 1978. In his opinion, if she were on her own, she would not be able to adequately provide for her own clothing, food or shelter because her symptoms prevented her from organizing a plan for living in the community.

The health care administrator of the Country Hills Care facility, Gwendolyn Clubb, testified she had known Law since April 1985. She had seen her several times a day excluding weekends for the past five months. On March 1, 1987, according to Clubb, Law refused to take her medication in liquid form. After she stopped taking her medication she stopped going to the day care program, refused further medication and refused further psychiatric treatment. Clubb further testified that when Law refused to take medication she exhibited delusional behavior. The latest incident was on March 20, 1987, when the ambulance drivers came to take Law to the hospital. Law told them she would not be able to go with them because her son was going to be assassinated the following Monday. Ruth C. Stamper, Law's mother, testified she had taken care of Law's financial affairs since 1974 and that Law had always denied she had a mental problem. Ms. Stamper said that because both she and her husband were in their 70's and her husband was in poor health, Law would not be able to live with them. She said that if her daughter would stay on medication it might be different.

Law testified on her own behalf, stating she did not believe she had a mental problem. She said she would stay on her medication if her doctor recommended and assured her there would be no side effects from it. To her knowledge she was suffering from no such side effects. On direct examination Law said she planned to stay in the Country Hills Residential Facility if transferred there from the hospital, that she had plenty of clothes, her regular meals were being provided, and she would continue to take her prescribed medicine. She stated her mother had been paying the bills and provided money for her as her social security payee for benefits for several years and she wanted her mother to continue in this capacity. Social worker Frances M. Edwards testified she had been the social worker since September 1986, visited Law five or six times since then and Law always appeared to be dressed appropriately. Law had told her that she did not need to be in a hospital because she had no mental disorder.

Appealing, Law contends the trial court gave a series of erroneous jury instructions and erroneously denied her requests for certain instructions. We examine these seriatim and find no error.

DISCUSSION

I

Law contends the trial court erred in denying her request for instructions 1) that she is presumed not gravely disabled and 2) relating the burden of proof beyond a reasonable doubt to the elements of grave disability. These were tailored instructions offered by Law which the court refused.

 Law asserts she was entitled to a jury instruction relating the reasonable doubt standard of proof to particular elements of the grave disability allegation. (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) Both Law and the county offered jury instructions as to the applicable burden of proof. The county's proposed instruction charged the jury that the applicable standard was the same as in a criminal case. The jury was unequivocally charged that the county "must prove that Sandra Law is gravely disabled beyond a reasonable doubt." The court then defined reasonable doubt and further instructed the jury as to the term " 'gravely disabled.' " The trial court is not required to give repetitive instructions. As this court stated in *Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1099 [242 Cal.Rptr. 289], "[t]he trial court may properly refuse the additional instructions if they are repetitive and merely restate legal principles in another manner. [Citation.]" There was no error in the instruction as given and in refusing the additional instruction requested by Law.

 Law also asserts the trial court erred in failing to instruct the jury she was presumed to be not gravely disabled. In *Conservatorship of Walker, supra,* the proposed conservatee had requested a jury instruction that he is presumed not to be gravely disabled. The requested instruction was refused by the trial court and challenged on appeal. We held that if requested, a court is required to instruct that a proposed conservatee is presumed not to be gravely disabled until the state carries its burden of proof. However, we also concluded the error was harmless beyond a reasonable doubt, stating "[t]he only effect of the presumption is to insure that the state proves its case beyond a reasonable doubt. The jury here was fully instructed as to the effect of the presumption and could not have been prejudiced by the failure to denominate the presumption." (196 Cal.App.3d at p. 1099.)

Similarly here, Law was entitled to an instruction she is presumed to be not gravely disabled. However, as in *Walker,* the jury was fully and properly instructed on the standard of proof and thus, failure to so instruct was not prejudicial. Moreover, in light of the strong evidence of Law's disability and the lack of any contrary evidence, failure to give the requested instruction was harmless beyond a reasonable doubt.

## II

■ Law next asserts the trial court erred in denying her requested special instructions dealing with the evidence of her ability and willingness to voluntarily accept treatment. The trial court correctly instructed the jury as to the definition of gravely disabled as provided by Welfare and Institutions Code section 5008, subdivision (h). That section defines "grave disability" as "a condition in which a person as a result of a mental disorder is unable to provide for his basic personal needs for food, clothing or shelter." Moreover, the trial court added the following: "even with the help of willing and responsible family members, friends or third parties." Law makes this strange argument that since she is living in a board and care home and her mother is the payee for the public support check, she is utilizing the assistance of family members, friends or third parties within the meaning of *Conservatorship of Davis* (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369], and other cases, and therefore, she is not gravely disabled. However, the facts of Law's case are markedly different. She was placed in the board and care facility as a result of a finding of grave disability. Following Law's logic, a proposed conservatee could never be found gravely disabled in a *reestablishment* situation because the conservator is a willing and responsible other third party assisting the conservatee and providing for his or her needs. This could not have been the legislative intent for it would nullify Welfare and Institutions Code section 5361 permitting reestablishment of the conservatorship.

The evidence here is uncontradicted that Law does not believe she has a mental disability, that her family members would not take her in, and that as recently as 10 days before the establishment of the conservatorship here she refused intramuscular treatment. The reason she is now receiving medication by injection is because she would not take her medication orally. The psychiatrist testified she would not accept treatment voluntarily. *Conservatorship of Walker, supra,* 196 Cal.App.3d 1082, is on point and holds against Law's position. The trial court here did not instruct the jury that it must find a conservatorship may not be imposed only if a person can provide for his needs and is willing to accept treatment, as was erroneously instructed in *Walker.* Here, the trial court gave the proper instruction on grave disability.

## III

■ Law contends the trial court erred in not instructing the jury that it could not find her gravely disabled without evidence of present disability. The trial court here instructed the jury as to Law's present disabilities by using the present tense in the definition of grave disability. The trial court is

not required to sua sponte instruct the jury to determine present incompetency rather than the likelihood of being incompetent in the future. Law selectively ignores certain testimony of Dr. Munos. Dr. Munos believed Law does not think she has a mental disorder and, lacking such insight, she would not voluntarily accept treatment not in some future time but if she were released today. Dr. Munos testified if Law were on her own that day she would be unable to provide for her own necessities. The evidence at trial proves beyond a reasonable doubt Law is presently gravely disabled.

## IV

■ Law argues the trial court was required to give circumstantial evidence jury instructions applicable to criminal cases, citing *People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 49-50 [286 P.2d 1], a criminal case. Again, we reiterate the conservatorship is a civil not a criminal proceeding and the trial court did give BAJI No. 2.00, the circumstantial evidence jury instruction. This is more than sufficient to advise the jury as to the nature, quality and use of circumstantial evidence. There is simply no merit in Law's contention. A trial court has no duty to give the requested instruction where the circumstantial evidence necessary to prove a certain mental state is not subject to any inference except that pointing to the existence of that mental state. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 175 [133 Cal.Rptr. 135, 554 P.2d 881].) This is the state of the evidence in this case. All circumstantial evidence pointed to Law's grave disability and to her need for a conservatorship.

Finally, the trial court instructed the jury that a person is not gravely disabled if she is able to provide for her own basic needs with the help of willing and responsible family members or third parties. There was no evidence of any willing responsible family member or third party to take Law in to care for her.

### DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Todd, J., concurred.