[No. E029397. Fourth Dist., Div. Two. July 11, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD LYNN BEESON, Defendant and Appellant.

## COUNSEL

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf, Matthew Mulford and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

## 1. Introduction

Donald Lynn Beeson (defendant) appeals from the trial court's judgment granting the People's petition for defendant's continued involuntary treatment as a mentally disordered offender (MDO). Defendant claims that the court erred in ordering defendant's continued confinement because insufficient evidence supported one of the criteria set forth in the MDO law,[1] namely, that defendant's mental disorder could not be kept in remission without treatment. Defendant further claims that the court erred in refusing to instruct the jury that it should presume that defendant was not an MDO for purposes of the proceeding.

We conclude that, based on the testimony of the staff psychiatrist at the mental hospital where defendant received his treatment, substantial evidence supported the jury's finding that defendant could not be kept in remission within the meaning of the statute. As to defendant's second claim, we conclude that, in the context of a proceeding on a petition for continued treatment under the MDO law, the court was not required to instruct the jury to presume that defendant was not an MDO for purposes of the current proceeding. Based on these conclusions, we affirm the trial court's judgment.

## 2. Factual and Procedural History

Defendant, who was 32 years old at the time of trial, first entered a state mental hospital at the age of 16 for committing an attempted rape offense. In the late 1980's, defendant committed a grand theft offense, during which he brandished a knife at his father in an effort to steal his father's television set. About the same time, defendant was convicted of robbery for beating and taking $1.35 from a person at a bus stop. In 1993, defendant was convicted of committing mayhem for severely beating a woman causing her to lose an eye and sustain skull fractures.

---

[1]Penal Code section 2960 et seq. All further statutory references will be to the Penal Code unless otherwise stated.

During his incarceration for the 1993 offense, defendant exhibited psychotic behavior, including one incident when he smeared his own feces. After that incident, defendant was transferred to Atascadero State Hospital (Atascadero). During his placement at Atascadero, defendant was under a one-year court order to take his medications. After the court order expired, defendant's condition deteriorated and he began to experience visual and command hallucinations.

Based on psychological reports, defendant was certified by the Board of Prison Terms as an MDO in 1997. The court continued his placement at Atascadero.

In 2000, the State Department of Mental Health transferred defendant to Patton State Hospital (Patton). In June of that year, defendant was placed under the care of Dr. Sanobar Baig, a staff psychiatrist at Patton.

Defendant's maximum term of commitment ended in April of 2001. On January 11, 2001, the San Bernardino County District Attorney filed a petition for defendant's continued treatment under the MDO law. During the hearing on the petition, Dr. Baig provided testimony concerning defendant's mental illness and treatment.

Consistent with defendant's earlier records, Dr. Baig testified that he had diagnosed defendant with schizophrenia. Dr. Baig stated that the overt symptoms of schizophrenia included hallucinations, hearing voices and commands, experiencing paranoia, and losing contact with reality. In defendant's case, however, Dr. Baig stated that defendant's overt symptoms were controlled with medication. Under Dr. Baig's care, defendant was taking Olanzapine, a antipsychotic medication.

Dr. Baig, however, also described the negative symptoms of defendant's illness, including being suspicious and guarded, lacking emotional responses, and thinking in an irrational manner. Even on medication, Dr. Baig explained, defendant exhibited some of these negative symptoms.

In addition to schizophrenia, Dr. Baig also diagnosed defendant with antisocial personality disorder and polysubstance dependence. Unlike schizophrenia, these two conditions were not considered to be serious mental disorders.

During some of his discussions with Dr. Baig, defendant denied having a mental illness. Instead, defendant characterized his problems as nervous breakdowns. At times, defendant told Dr. Baig that he did not need his

medication. Dr. Baig explained that, because defendant failed to acknowledge his mental illness, defendant did not have a relapse prevention plan—a plan to prevent the reoccurrence of the overt symptoms of his illness. Defendant also resisted treatment by refusing to attend therapy sessions. Dr. Baig opined that defendant would not follow a treatment plan on a voluntary basis. Dr. Baig also opined that, without his medication, defendant would revert back to exhibiting the overt symptoms of hallucinations, paranoia, and aggressive or violent behavior.

Dr. Michael Kania provided testimony for the defense. After reviewing defendant's records and an hour-and-a-half-long interview, Dr. Michael Kania, a clinical and forensic psychologist, agreed with Dr. Baig's diagnosis that defendant suffered from schizophrenia. Dr. Kania also agreed with Dr. Baig that defendant did not exhibit any overt symptoms of his illness. Dr. Kania, however, testified that defendant acted as a reasonable person in his situation in voluntarily complying with his treatment plan. Dr. Kania also testified that defendant, after his release, would continue to take his medication.

The jury found that defendant met the criteria of being a MDO within the meaning of section 2970. The court then ordered that defendant remain in the custody of State Department of Mental Health for another period of one year.

### 3. *Sufficiency of the Evidence*

■ Defendant claims that insufficient evidence supported the jury's finding that he was not in remission or could not be kept in remission without treatment within the meaning of section 2962.

■ In reviewing a claim of insufficient evidence, we view the entire record in the light most favorable to the judgment and determine whether it discloses substantial evidence—i.e., evidence that is reasonable, credible, and of solid value—to support the jury's finding.[2]

■ Under the MDO law, continued treatment requires that the person satisfy certain criteria: that (1) he continues to have a severe mental disorder; (2) his mental disorder is not in remission or cannot be kept in remission without treatment; and (3) he continues to present a substantial danger of

---

[2]*People v. Valdez* (2001) 89 Cal.App.4th 1013, 1016 [107 Cal.Rptr.2d 783]; *People v. Clark* (2000) 82 Cal.App.4th 1072, 1082 [98 Cal.Rptr.2d 767].

physical harm to others.[3] ▓▓▓▓ In this case, defendant challenges the jury's finding as to the second element. As to that element, the word "remission" is defined as "a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support."[4] Also, a person that cannot be kept in remission without treatment includes situations where the person has been in remission for the past year, but also has exhibited unexcused physical violence, has threatened another with substantial physical harm, intentionally has caused property damage, or has failed to voluntarily follow his treatment plan.[5] Therefore, under the last exception, by establishing that the defendant has failed to voluntarily follow his treatment plan, the People can show that defendant's mental disorder cannot be kept in remission without treatment.

The record of the hearing on the petition for continued treatment reveals substantial evidence of defendant's noncompliance. We apply a reasonable person standard in determining whether a person has followed his treatment plan.[6] Although defendant argues that any lack of cooperation was well within what would have been expected of a reasonable person, the People's evidence indicates that defendant was inconsistent in acknowledging his mental illness and his need for medication and treatment. A reasonable person, whose mental disorder can be kept in remission with treatment, must, at minimum, acknowledge if possible the seriousness of his mental illness and cooperate in all the mandatory components of his treatment plan.

Dr. Baig testified that, during his last interview with defendant, about two weeks before the hearing, defendant denied that he had a mental illness. Defendant also told Dr. Baig that his illness was in remission and he did not require any medication. Defendant has expressed the same sentiments on prior occasions. Although Dr. Baig explained that defendant required medication to control the symptoms of his illness, defendant's perception of his illness and his need for medication has been inconsistent. At times, defendant has characterized his condition as simply a drug problem or a nervous breakdown.

At Patton, defendant's treatment plan consisted of various components, including medication, therapy, and mandatory and recommended group meetings and activities. Dr. Baig testified that defendant was sporadic or

---

[3]Section 2972, subdivision (e); *People v. Fernandez* (1999) 70 Cal.App.4th 117, 126 [82 Cal.Rptr.2d 469]; *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 837 [58 Cal.Rptr.2d 32].

[4]Section 2962, subdivision (a).

[5]Section 2962, subdivision (a); see *People v. Buffington* (1999) 74 Cal.App.4th 1149, 1161, footnote 4 [88 Cal.Rptr.2d 696].

[6]Section 2962, subdivision (a).

inconsistent in his attendance and level of participation at certain meetings. For example, defendant had failed to cooperate fully during his psychological evaluation. On another occasion, defendant stopped attending group meetings with a rehabilitation therapist because he believed that the therapist was criticizing or picking on him.

Defendant also has been resistant during his meetings with the staff to develop a relapse prevention plan. Defendant refused to meet with a particular social worker for individual therapy. Defendant also refused to address issues of his illness and his relapse prevention plan with his current social worker. Dr. Baig testified that, as a result of his failure to acknowledge his illness, defendant currently did not have a workable relapse prevention plan.

According to Dr. Kania, however, defendant acted reasonably in following his treatment plan. Dr. Kania noted that defendant's mental disorder was in remission within the meaning of the MDO law because he exhibited no violent or aggressive behavior. Dr. Kania explained: "Psychosocial support is one form of treatment. So there would be medication, there would be someone there to help out . . . the more traditional [type] of therapy that someone might be involved in. [¶] So to go back to your question, I don't necessarily look at that other than to see if the patient is attending treatment. But I am assuming that if the patient doesn't have the overt symptoms and is not being violent or aggressive towards others, that for whatever reason that's the fact and they meet that criteria."

Under section 2962, not voluntarily following the treatment plan is essentially an exception to the finding that the illness is in remission. The Legislature listed several circumstances that would indicate that a person's illness could not be kept in remission by treatment. Even when a person does not exhibit violent or threatening behavior, his failure to participate in his treatment plan also may reveal whether he can reenter society without the constraints and protections afforded in a structured environment. In other words, rather than relying on the presence of overt symptoms, the Legislature provided additional factors in gauging a person's current condition. Such factors are not intended to be superfluous or meaningless.[7] As stated above, the statute clearly provides that a person's failure to voluntarily follow his treatment plan may be grounds for a finding that he cannot be kept in remission without treatment.[8]

In this case, Dr. Baig disagreed with Dr. Kania as to defendant's compliance with his treatment plan. Dr. Baig also opined that, if defendant was

---

[7]See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 635 [59 Cal.Rptr.2d 671, 927 P.2d 1175].

[8]Section 2962, subdivision (a).

released into the community, his illness would not remain in remission and he likely would revert back to his aggressive or violent behavior. Based on the evidence in the record, we conclude that a reasonable jury could have relied on Dr. Baig's testimony and found that defendant failed to voluntarily follow his treatment plan. Accordingly, a reasonable jury could find that the People satisfied their burden in proving beyond a reasonable doubt that defendant could not be kept in remission without treatment within the meaning of the MDO law.

### 4. Jury Instruction: Presumption of Not Mentally Disordered

 Defendant claims the trial court erred in denying defendant's request to instruct the jury that it should presume that defendant was not an MDO for purposes of the current proceeding. Defendant argues that, as in a criminal trial and other civil commitment proceedings, the requirement that the People prove guilt or certain criteria beyond a reasonable doubt invokes the presumption that the defendant is innocent or does not meet those criteria. This presumption, defendant contends, must be included in the trial court's charge to the jury.

 A court must instruct on the general principles of law that are relevant to the issues in a given case.[9] Instructions, therefore, must disclose the principles that are closely and openly connected with the facts and are necessary for the jury's understanding and deliberation of the case.[10]

 The question in this case is whether the trial court, upon defendant's request, was required to instruct the jury not only to apply the beyond a reasonable doubt standard of proof, but also to presume that defendant was not an MDO for purposes of the current proceedings.

We begin our discussion with a background of the standard of proof and presumption of innocence as applied in the context of criminal trials. **(6)** The Fourteenth Amendment of the United States Constitution provides that the state shall not deprive a person of his liberty without due process of law. In the context of a criminal trial, due process requires proof beyond a reasonable doubt.[11] A trial court, therefore, must instruct the jury that, before reaching a guilty verdict on the criminal charge, the prosecution must prove every required element beyond a reasonable doubt.[12]

---

[9]*People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094].
[10]*People v. Breverman, supra*, 19 Cal.4th at page 154.
[11]*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072-1073, 25 L.Ed.2d 368].
[12]*Arizona v. Fulminante* (1991) 499 U.S. 279, 291 [111 S.Ct. 1246, 1254-1255, 113 L.Ed.2d 302].

Due process may also require the court to instruct the jury to presume that the criminal defendant is innocent until proven guilty.[13] In *Taylor v. Kentucky*,[14] the United States Supreme Court determined whether the trial court should have instructed the jury on the presumption of innocence. The court noted that, unlike a legal scholar, who may understand the presumption of innocence and the prosecution's burden of proof as logically similar, the layperson may draw significant additional guidance from a presumption-of-innocence instruction.[15] The court further noted that the instruction is one way of impressing upon the jury the importance of the criminal defendant's right to have his case determined solely upon the evidence presented at trial, and not upon other inappropriate grounds, including the defendant's indictment and his continued custody.[16]

Under the facts in that case, the Supreme Court rejected the People's argument that no additional presumption-of-innocence instruction is necessary when a court already instructs the jury on the prosecution's burden of proof.[17] After initially pointing out the inadequacies of the reasonable doubt instruction, the court explained, "even if the instruction on reasonable doubt had been more clearly stated, the [People's] argument ignores both the special purpose of a presumption-of-innocence instruction and the particular need for such an instruction in this case."[18] The court, therefore, held that, under the circumstances, the court's denial of the defendant's requested instruction violated his right to a fair trial under the due process clause of the Fourteenth Amendment.[19]

In *Kentucky v. Whorton*,[20] the United States Supreme Court decided whether, under a different set of facts, the Kentucky Supreme Court properly applied the holding in *Taylor*. In revisiting its earlier holding, the court noted that in *Taylor*, it did not "fashion a new rule of constitutional law requiring that such an instruction be given in every criminal case."[21] Rather, its holding was limited to the facts in that case, the record of which revealed inappropriate references by the prosecutor, inadequate instructions by the court, and weak evidence in support of the jury's verdict.[22]

█ Instead of a rule of general application, the Supreme Court established a different approach: "[T]he failure to give a requested instruction on

[13]*Taylor v. Kentucky* (1978) 436 U.S. 478, 490 [98 S.Ct. 1930, 1937, 56 L.Ed.2d 468].

[14]*Taylor v. Kentucky, supra*, 436 U.S. 478.

[15]*Taylor v. Kentucky, supra*, 436 U.S. at page 484 [98 S.Ct. at page 1934].

[16]*Taylor v. Kentucky, supra*, 436 U.S. at page 485 [98 S.Ct. at pages 1934-1935].

[17]*Taylor v. Kentucky, supra*, 436 U.S. at pages 486-490 [98 S.Ct. at pages 1935-1937].

[18]*Taylor v. Kentucky, supra*, 436 U.S. at page 488 [98 S.Ct. at page 1936].

[19]*Taylor v. Kentucky, supra*, 436 U.S. at page 490 [98 S.Ct. at page 1937].

[20]*Kentucky v. Whorton* (1979) 441 U.S. 786 [99 S.Ct. 2088, 60 L.Ed.2d 640] (hereafter *Whorton*).

[21]*Whorton, supra*, 441 U.S. at page 788 [99 S.Ct. at page 2089].

[22]*Whorton, supra*, 441 U.S. at pages 788-789 [99 S.Ct. at pages 2089-2090].

the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor*, such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial."[23] In *Whorton*, the Supreme Court held that the state court erred in deciding that the due process clause of the Fourteenth Amendment required the presumption-of-innocence instruction in every criminal case.[24] Thus, under the United States Supreme Court's opinion in *Taylor v. Kentucky*, the presumption-of-innocence instruction, which merely provides an additional safeguard against unjust convictions, is required only where the totality of the circumstances suggests that defendant received a less than fair trial.[25]

In addressing this issue, the California Supreme Court has followed the United States Supreme Court's approach in *Taylor*. "[D]ue process does not mandate the 'use of the particular phrase "presumption of innocence"—or any other form of words . . . .' [Citations.] Rather, this traditional formulation 'simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial.' [Citation.] Accordingly, we decline defendant's implicit invitation to confine instruction on the presumption of innocence to any rigid or narrowly precise terms. [Citation.] As long as the court's charge to the jury conveys the substance of the principle, it will satisfy due process."[26] Well-established federal and state law, therefore, provides that a defendant in a criminal case, while not always entitled to a separate instruction, does have a constitutional right to be presumed innocent until the People prove his guilt beyond a reasonable doubt.

Consistent with the case authority at the time, California courts have addressed the issue of whether the same standard of proof and presumption of innocence applies in the context of civil commitments. As we will discuss, although the courts previously embraced the view that civil commitment proceedings were criminal or punitive in nature, the current law reveals a movement toward the opposite view that such proceedings are civil in nature. Thus, while courts in the past have applied criminal procedural protections broadly in the context of civil commitment proceedings, the cases now suggest that such broad application of procedural protections was

[23]*Whorton, supra,* 441 U.S. at page 789 [99 S.Ct. at page 2090]; see also *Delo v. Lashley* (1993) 507 U.S. 272, 278 [113 S.Ct. 1222, 1225-1226, 122 L.Ed.2d 620].

[24]*Whorton, supra,* 441 U.S. at pages 789-790 [99 S.Ct. at pages 2089-2090].

[25]*Whorton, supra,* 441 U.S. at page 789 [99 S.Ct. at pages 2089-2090]; *Jackson v. Virginia* (1979) 443 U.S. 307, 315 [99 S.Ct. 2781, 2786-2787, 61 L.Ed.2d 560]; *Arizona v. Fulminante, supra,* 499 U.S. at page 291 [111 S.Ct. at pages 1254-1255].

[26]*People v. Hawthorne* (1992) 4 Cal.4th 43, 72 [14 Cal.Rptr.2d 133, 841 P.2d 118].

hasty and ill founded. Based on our analysis below, we conclude that, a defendant in an MDO proceeding, despite the statutorily required proof beyond a reasonable doubt standard, does not have a constitutional right to the additional procedural safeguards generally reserved for criminal defendants, including a presumption-of-innocence instruction.

A brief review of the earlier cases is necessary for our analysis. In 1975, the California Supreme Court decided *People v. Burnick*.[27] There, the court, in relying on several United States Supreme Court cases, held that, under the due process clauses of the federal and state Constitutions, a defendant in a mentally disordered sex offender proceeding[28] is entitled to proof beyond a reasonable doubt.[29] The deprivation of liberty and the stigma associated with being mentally ill justified the application of the criminal standard of proof in the context of a civil commitment proceeding.[30] Regardless of whether the proceedings were labeled "civil" or "criminal," the court concluded that such proceedings are subject to the " 'full panoply' of the protections of the due process clause . . . ."[31]

In addressing the issue in the context of a Lanterman-Petris-Short (LPS) proceeding,[32] the court, in *Conservatorship of Roulet*,[33] reached the same conclusion. The court held that "A consistent line of cases decided by the United States Supreme Court and by this court require us to reject respondent's reliance on 'civil' labels and to hold that since grave disability proceedings 'seriously put at risk both the personal liberty and the good name of the individual, the safeguard of proof beyond a reasonable doubt is required.' [Citation.]"[34] Lower courts have relied on *Roulet* for its conclusion that proof beyond a reasonable doubt, as well as a unanimous jury, is required in a civil commitment proceeding.[35]

In one appellate court case, *Conservatorship of Walker*,[36] the jury found the defendant to be gravely disabled within the meaning of the LPS Act. In that case, the trial court rejected the defendant's request for an instruction

[27]*People v. Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352] (hereafter *Burnick*).

[28]Former Welfare and Institutions Code section 6300 et seq.

[29]*Burnick, supra*, 14 Cal.3d at pages 322, 324, 332.

[30]*Burnick, supra*, 14 Cal.3d at pages 318-322.

[31]*Burnick, supra*, 14 Cal.3d at page 324.

[32]See Welfare and Institutions Code section 5000 et seq.

[33]*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 229-230, 235 [152 Cal.Rptr. 425, 590 P.2d 1] (hereafter *Roulet*).

[34]*Roulet, supra*, 23 Cal.3d at pages 229-230.

[35]See, e.g., *Conservatorship of Margaret L.* (2001) 89 Cal.App.4th 675, 682 [107 Cal.Rptr.2d 542].

[36]*Conservatorship of Walker* (1987) 196 Cal.App.3d 1082 [242 Cal.Rptr. 289].

that a person is presumed not gravely disabled unless the People prove otherwise. Division One of this appellate district, in relying on the California Supreme Court's holding in *Roulet*, stated: "A proposed conservatee has a constitutional right to a finding based on proof beyond a reasonable doubt. [Citation.] Without deciding whether the court has a sua sponte duty to so instruct, we are satisfied that, on request, a court is required to instruct in language emphasizing a proposed conservatee is presumed to not be gravely disabled until the state carries its burden of proof."[37] The court, nevertheless, found the error harmless because the jury was given complete instructions on the "effect of the presumption."[38] The facts also overwhelmingly supported the jury's finding of grave disability.[39]

Division One again addressed the same issue in *Conservatorship of Law*.[40] There, the court reiterated that the defendant was entitled to a presumption-of-not-gravely-disabled instruction.[41] As in *Conservatorship of Walker*, the court found the error harmless based on the court's full instructions on the standard of proof and the strong and undisputed evidence of the defendant's disability.[42]

In both cases, the court assumed that a presumption-of-innocence-like instruction was constitutionally required in the context of a civil commitment proceeding. Neither case, however, analyzed the issue at any length.

As mentioned above, in recent years, courts have reevaluated the nature of civil commitment proceedings and the application of criminal procedural safeguards in those proceedings. This reevaluation has led to the conclusion that defendants in civil commitment proceedings, generally, are not constitutionally entitled to the procedural safeguards afforded to defendants in criminal trials.

In *Allen v. Illinois*,[43] the United States Supreme Court determined whether a defendant was entitled to his Fifth Amendment right against compulsory self-incrimination in the context of a civil commitment proceeding under the Illinois Sexually Dangerous Persons Act. The court noted that the Illinois Legislature's express intent that the proceedings be civil in nature, while not always dispositive, established that such proceedings would not invoke the

---

[37]*Conservatorship of Walker, supra*, 196 Cal.App.3d at page 1099.
[38]*Conservatorship of Walker, supra*, 196 Cal.App.3d at page 1099.
[39]See *Conservatorship of Walker, supra*, 196 Cal.App.3d at page 1094.
[40]*Conservatorship of Law* (1988) 202 Cal.App.3d 1336 [249 Cal.Rptr. 415].
[41]*Conservatorship of Law, supra*, 202 Cal.App.3d at page 1340.
[42]*Conservatorship of Law, supra*, 202 Cal.App.3d at page 1340.
[43]*Allen v. Illinois* (1986) 478 U.S. 364 [106 S.Ct. 2988, 92 L.Ed.2d 296] (hereafter *Allen*).

procedural safeguards available in criminal trials.[44] To avoid this result, the defendant must provide " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' . . . ."[45] In *Allen*, the court rejected the defendant's challenge and concluded that the law, the purpose of which was to provide care and treatment to sexually dangerous persons, was essentially civil in nature.[46]

Specifically, the court was unpersuaded by the defendant's reliance on the fact that the Illinois law provided for other procedural safeguards found in criminal trials, including the right to a jury trial and the right to proof beyond a reasonable doubt.[47] The court reasoned: "[T]he State has indicated quite clearly its intent that these commitment proceedings be civil in nature; its decision nevertheless to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there."[48] In reaching this conclusion, the court explained that, contrary to its sweeping statement applying the right against self-incrimination to any case involving the deprivation of liberty in an earlier case, which, notably, was cited by the California Supreme Court in addressing similar issues,[49] such procedural protections only apply in cases that are penal in nature.[50]

In another case, *Kansas v. Hendricks*,[51] the United States Supreme Court decided, among other things, whether the constitutional guarantees against ex post facto laws and double jeopardy applied to a proceeding under the Kansas Sexually Violent Predator Act. The court held that the law, in purpose and effect, was enacted to confine and treat, rather than to impose punishment upon, those who fell under its provisions.[52] Accordingly, the court held that the criminal protections against ex post facto laws and double jeopardy did not apply.[53]

Following the United States Supreme Court's lead, California courts have, to a large extent, retreated from their earlier broad-brush approach to applying criminal protections in civil commitment proceedings and moved toward the view that such proceedings are nonpunitive measures for the

[44]*Allen, supra,* 478 U.S. at pages 368-369 [106 S.Ct. at pages 2991-2992].
[45]*Allen, supra,* 478 U.S. at page 369 [106 S.Ct. at page 2992].
[46]*Allen, supra,* 478 U.S. at page 369 [106 S.Ct. at page 2992].
[47]*Allen, supra,* 478 U.S. at pages 371-372 [106 S.Ct. at pages 2993-2994].
[48]*Allen, supra,* 478 U.S. at page 372 [106 S.Ct. at page 2993].
[49]See, e.g., *Burnick, supra,* 14 Cal.3d at pages 315, 318, citing *In re Gault* (1967) 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527].
[50]*Allen, supra,* 478 U.S. at pages 372-373 [106 S.Ct. at pages 2993-2994].
[51]*Kansas v. Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501] (hereafter *Hendricks*).
[52]*Hendricks, supra,* 521 U.S. at pages 368-369 [117 S.Ct. at pages 2085-2086].
[53]*Hendricks, supra,* 521 U.S. at page 369-371 [117 S.Ct. at pages 2085-2087].

commitment and treatment of those who suffer from some mental illness or disorder.[54] Specifically, the courts have rejected attempts to extend to MDO cases the following procedural safeguards: the prohibition against ex post facto laws;[55] the right against compulsory self-incrimination;[56] and the right to personally waive a jury trial.[57] In these cases, the courts uniformly have held that civil commitment proceedings are civil in nature and, therefore, do not implicate the constitutional rights afforded to criminal defendants.[58]

In one of these cases, *People v. Montoya*,[59] this court determined whether the trial court infringed upon a defendant's constitutional right to a jury trial by failing to secure a personal waiver. We first noted that, in a criminal proceeding, a defendant's right to a jury trial under the federal and state Constitutions may be waived by only defendant himself and not his attorney.[60] However, as we explained, the right to a jury trial under statutory law or in a civil case may be waived by counsel.[61] In agreeing with other California courts that an MDO proceeding is a civil hearing, we concluded that the defendant's attorney could waive the right to a jury trial on behalf of his client in a civil commitment proceeding.[62] Therefore, although a defendant in an MDO case has a statutory right to a jury trial, he does not have a constitutional right to a jury trial and, specifically, he has no right to a personal waiver.[63]

Based on this reevaluation of civil commitment proceedings, we turn now to the precise issue in this case: whether a defendant in an MDO case has a constitutional right to proof beyond a reasonable doubt and whether that

[54]See, e.g., *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584]; *People v. Talhelm* (2000) 85 Cal.App.4th 400, 404 [102 Cal.Rptr.2d 150]; *People v. Buffington, supra*, 74 Cal.App.4th 1149, 1163; *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 148 [82 Cal.Rptr.2d 481]; *People v. Robinson* (1998) 63 Cal.App.4th 348, 350 [74 Cal.Rptr.2d 52]; *People v. Superior Court (Myers), supra,* 50 Cal.App.4th at pages 834, 840-841 (hereafter *Myers*).

[55]See *People v. Robinson, supra,* 63 Cal.App.4th at page 349; *Myers, supra,* 50 Cal.App.4th at pages 829, 840-841.

[56]*People v. Clark, supra,* 82 Cal.App.4th at page 1081; *People v. Merfeld* (1997) 57 Cal.App.4th 1440, 1447 [67 Cal.Rptr.2d 759].

[57]*People v. Montoya* (2001) 86 Cal.App.4th 825, 832 [103 Cal.Rptr.2d 579].

[58]See *People v. Montoya, supra,* 86 Cal.App.4th at page 830; *People v. Clark, supra,* 82 Cal.App.4th at page 1080; *People v. Robinson, supra,* 63 Cal.App.4th at page 352; *People v. Merfeld, supra,* 57 Cal.App.4th at page 1446; *Myers, supra,* 50 Cal.App.4th at pages 840-841.

[59]*People v. Montoya, supra,* 86 Cal.App.4th 825 (hereafter *Montoya*).

[60]*Montoya, supra,* 86 Cal.App.4th at page 829.

[61]*Montoya, supra,* 86 Cal.App.4th at page 829.

[62]*Montoya, supra,* 86 Cal.App.4th at pages 830-831.

[63]*Montoya, supra,* 86 Cal.App.4th at pages 831-832; but see *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [100 S.Ct. 2227, 2229-2230, 65 L.Ed.2d 175]; *Vitek v. Jones* (1980) 445 U.S. 480, 491-494 [100 S.Ct. 1254, 1262-1264, 63 L.Ed.2d 552]; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 546-547 [110 Cal.Rptr.2d 412, 28 P.3d 151].

right requires the giving of a presumption-of-innocence-like instruction. Earlier cases held that the failure to give such an instruction during a civil commitment hearing, while possibly harmless, amounted to constitutional error.[64] As discussed above, however, courts have retreated from extending procedural rights that usually are reserved for criminal defendants to defendants in civil commitment proceedings.

We must analyze this case in light of the recent reevaluation of civil commitment proceedings. In doing so, we conclude that, while a defendant in a civil commitment proceeding is entitled, under the MDO law and possibly the state Constitution, to proof beyond a reasonable doubt, he is not entitled to any additional safeguards afforded to criminal defendants under the Fourteenth Amendment of the federal Constitution.

In *Addington v. Texas*,[65] the United States Supreme Court decided what standard of proof was required under the due process clause of the Fourteenth Amendment in an involuntary commitment proceeding. The court weighed the individual's interest in not being committed involuntarily and indefinitely in a state mental hospital against the state's interest in confining those who are emotionally disturbed and dangerous.[66] On the one hand, the individual has a significant liberty interest in being free from confinement and free from the stigma associated with such confinement.[67] On the other hand, the state, under its parens patriae power, has a legitimate interest in providing treatment for the mentally ill, and also, under its police power, has a legitimate interest in protecting the community from dangerous individuals.[68]

In weighing these countervailing interests, the Supreme Court considered the risk of erroneous decisions.[69] Reasoning that the preponderance of the evidence standard allowed for a greater risk of error in making involuntary commitment decisions, the court held that the protection of the liberty interest at stake required a higher standard of proof.[70] The court, however,

---

[64]*Conservatorship of Walker, supra*, 196 Cal.App.3d at page 1094; *Conservatorship of Law, supra*, 202 Cal.App.3d at page 1340.

[65]*Addington v. Texas* (1979) 441 U.S. 418 [99 S.Ct. 1804, 60 L.Ed.2d 323] (hereafter *Addington*).

[66]*Addington, supra*, 441 U.S. at page 425 [99 S.Ct. at pages 1808-1809].

[67]*Addington, supra*, 441 U.S. at pages 425-426 [99 S.Ct. at pages 1808-1810]; see also *Foucha v. Louisiana* (1992) 504 U.S. 71, 79 [112 S.Ct. 1780, 1784-1785, 118 L.Ed.2d 437]; *Vitek v. Jones, supra*, 445 U.S. at page 494 [100 S.Ct. at page 1264].

[68]*Addington, supra*, 441 U.S. at page 426 [99 S.Ct. at pages 1809-1810].

[69]*Addington, supra*, 441 U.S. at page 425 [99 S.Ct. at pages 1808-1800], citing *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18].

[70]*Addington, supra*, 441 U.S. at pages 426-427 [99 S.Ct. at pages 1809-1810].

rejected the argument that civil commitment proceedings required the standard of proof reserved for criminal cases.[71] "This unique standard of proof, not prescribed or defined in the Constitution, is regarded as a critical part of the 'moral force of the criminal law,' [citation], and we should hesitate to apply it too broadly or casually in noncriminal cases. [Citation.]"[72] Based on certain considerations, including the civil nature of involuntary commitment proceedings and the treatment aspect of the mentally ill person's confinement, the court held that the federal Constitution does not require proof beyond a reasonable doubt.[73] Instead, the court concluded that, in light of the individual and governmental interests involved, due process would be satisfied with the midlevel standard of clear and convincing evidence.[74]

While the Fourteenth Amendment may require clear and convincing evidence, states are free to impose a higher standard of proof.[75] In California, both the courts[76] and the Legislature[77] have required that the People establish that an individual meets certain criteria under the MDO law beyond a reasonable doubt. The MDO law, and possibly the state Constitution, therefore, requires application of the criminal law standard of proof. Neither, however, provides authority for the argument that application of the beyond a reasonable doubt standard of proof triggers a right to a presumption-of-innocence-like instruction.

The term "presumption of innocence" alone indicates that it applies exclusively in the criminal context, where the jury makes a determination as to a defendant's guilt. "The presumption operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt. [Citation.]"[78]

Even if we view the presumption in a more general sense as a warning against the consideration of extraneous factors, we cannot conclude that the federal and state Constitutions require a presumption-of-innocence-like instruction outside the context of a criminal case. Particularly, we conclude that, based on the civil and nonpunitive nature of involuntary commitment proceedings, a mentally ill or disordered person would not be deprived of a fair trial without such an instruction.

---

[71]*Addington, supra*, 441 U.S. at pages 427-428, 431 [99 S.Ct. at pages 1810-1811, 1812].
[72]*Addington, supra*, 441 U.S. at page 428 [99 S.Ct. at page 1810].
[73]*Addington, supra*, 441 U.S. at pages 427-431 [99 S.Ct. at pages 1810-1812].
[74]*Addington, supra*, 441 U.S. at pages 431-433 [99 S.Ct. at pages 1812-1813]; see also *Foucha v. Louisiana, supra*, 504 U.S. at page 86 [112 S.Ct. at pages 1788-1789].
[75]*Addington, supra*, 441 U.S. at pages 430-431 [99 S.Ct. at pages 1811-1812].
[76]*Hubbart v. Superior Court, supra*, 19 Cal.4th at page 1152, footnote 19; *People v. Superior Court (Blakely)* (1997) 60 Cal.App.4th 202, 215-216 [70 Cal.Rptr.2d 388].
[77]Section 2972, subdivision (a).
[78]*Delo v. Lashley, supra*, 507 U.S. 272, 278 [113 S.Ct. 1222, 1225, 122 L.Ed.2d 620].

Our conclusion is based on the fact that the risk of error is qualitatively different in the context of a civil commitment hearing. "The heavy standard applied in criminal cases manifests our concern that the risk of error to the individual must be minimized even at the risk that some who are guilty might go free. [Citation.] The full force of that idea does not apply to a civil commitment. It may be true that an erroneous commitment is sometimes as undesirable as an erroneous conviction, [citation]. However, even though an erroneous confinement should be avoided in the first instance, the layers of professional review and observation of the patient's condition, and the concern of family and friends generally will provide continuous opportunities for an erroneous commitment to be corrected. Moreover, it is not true that the release of a genuinely mentally ill person is no worse for the individual than the failure to convict the guilty. One who is suffering from a debilitating mental illness and in need of treatment is neither wholly at liberty nor free of stigma. [Citations.] It cannot be said, therefore, that it is much better for a mentally ill person to 'go free' than for a mentally normal person to be committed."[79] Consequently, although an individual has a liberty interest in being free from involuntary commitment, due process does not require the same protections afforded to criminal defendants.[80]

Furthermore, courts generally have refused to extend the presumption of innocence beyond the context of criminal or quasi-criminal proceedings.[81] In a civil proceeding under the MDO law, while the court must instruct on the burden of proof, there is no basis for an additional instruction on the presumption of non-MDO status. The statute does not suggest such a requirement.[82] A state's decision "to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there. . . ."[83]

In this case, the trial court fully instructed the jury on the People's burden of proof. The court read to the jury a modified version of CALJIC No. 2.90, as follows: "The Petitioner has the burden of proving that Mr. Beeson meets

[79]*Addington, supra*, 441 U.S. at pages 428-429 [99 S.Ct. at pages 1810-1811].

[80]*Addington, supra*, 441 U.S. at page 431 [99 S.Ct. at page 1812].

[81]See, e.g., *INS v. Lopez-Mendoza* (1984) 468 U.S. 1032, 1043-1044 [104 S.Ct. 3479, 3485-3486, 82 L.Ed.2d 778] (civil deportation proceeding); *People v. Djekich* (1991) 229 Cal.App.3d 1213, 1223, footnote 9 [280 Cal.Rptr. 824] (civil penalty case); *Duckett v. Godinez* (9th Cir. 1995) 67 F.3d 734, 748 (in general); *Rosenthal v. Justices of the S. Ct. of California* (9th Cir. 1990) 910 F.2d 561, 564; see also *In re Winship, supra*, 397 U.S. at pages 363, 368 [90 S.Ct. at pages 1072, 1074-1075] (juvenile delinquency); *In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001-1002 [209 Cal.Rptr. 67] (civil contempt proceeding deemed quasi-criminal).

[82]Compare section 2972 with section 1369 (mental competence) and *People v. Rells* (2000) 22 Cal.4th 860, 866 [94 Cal.Rptr.2d 875, 996 P.2d 1184].

[83]*Allen, supra*, 478 U.S. at page 372 [106 S.Ct. at page 2993], citation omitted.

the criteria of Penal Code § 2970 and in case of a reasonable doubt as to whether he meets the criteria of Penal Code § 2970, Mr. Beeson is entitled to a finding of NOT TRUE. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." We believe that the court's instructions more than satisfied the requirements of the federal and state Constitutions.

Additionally, in this case, the People filed a petition for continued treatment after a prior determination by certain professionals that defendant was an MDO. Defendant's request for non-MDO status contradicts, therefore, the initial findings certified to the Board of Prison Terms under section 2962. Also, during the proceedings, defense counsel specifically informed the jury that the board had determined that defendant was an MDO. Therefore, although the current proceedings provided defendant with the first opportunity for a jury determination as to whether he met the criteria set forth in sections 2962 and 2970, a presumption of non-MDO status would have been inappropriate and possibly confusing under the circumstances.

In sum, from the United States Supreme Court's opinion in *Addington*, the federal Constitution requires neither proof beyond a reasonable doubt nor a presumption against the involuntary commitment of mentally ill and dangerous persons. Despite California's application of the criminal law standard of proof, the provisions of the California Constitution and the MDO law does not require other procedural safeguards reserved for criminal defendant. In particular, we hold that, in a proceeding held on a petition for continued treatment under section 2972, a trial court is not required to instruct the jury to presume that the defendant is not an MDO for purposes of that proceeding.

### 5. *Disposition*

We affirm the judgment.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 2002.